UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX JOE GONZALEZ, | No. 2:18-cv-2009-TLN DB (PC) |
| Plaintiff, | |
| v. | ORDER |
| KING, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This matter is set for a jury trial before District Judge Troy L. Nunley on March 8, 2021, at 9:00 a.m. Before the Court is Plaintiff's motion seeking the attendance of two incarcerated witnesses to voluntarily testify at the trial. (ECF No. 35.) Defendants have not responded to the motion.

**I.    Plaintiff's Allegations**

Plaintiff's claims arose during his incarceration at Mule Creek State Prison ("MCSP") in Ione, California. He is proceeding on an Eighth Amendment failure-to-protect claim against correctional officers King, Pablo, Tejeda, Kendall, and Bienavides.

Plaintiff alleges that several times before the incident at issue here, he alerted the defendants that his cellmate, Antonio, was acting paranoid and violent towards him, threatening him, and accusing him of being a demon that wants to "get him." Plaintiff asked the defendants to

1

move him to another cell, but each defendant ignored his pleas. Defendant King laughed at plaintiff and told him "go back to the cell and handle it. Fight then I'll move you."

On December 15, 2017, plaintiff's cellmate violently attacked plaintiff and rubbed feces in his eyes, causing plaintiff to suffer black eyes, conjunctivitis, glaucoma, and permanent blurred vision and damage to his left eye.

## II.     Proposed Witness Testimony

### A. Inmate Rob Mixon

Plaintiff's first proposed witness is Rob Mixon, CDCR # T-11658. Plaintiff submits an affidavit from this witness, who was a building porter worker in A Yard Building 3 in December 2017 and was responsible for sweeping and mopping the entire building. Mixon Aff. ¶ 2. Inmate Mixon was familiar with Antonio and witnessed him "act[] out a lot, shout[] violently and screem[]. Talk[] to himself and I beleive he hears voices." Id. ¶ 13. Inmate Mixon claims that other inmates and staff "were well aware" of Antonio's behavior and had "clowned about Antonio's mental health." Id. ¶¶ 13, 16.

When plaintiff was taken to his new cell upon arrival at MCSP, Inmate Mixon heard plaintiff tell officers King and Tejeda that he had safety concerns because "he was told his new celly was nuts." Mixon Aff. ¶ 8. Officer King is said to have responded, "That's his assigned housing your [*sic*] not going no where else. But if you want a cell change then he had to kick his celly's ass, then we could move you." Id. ¶ 9. On a couple of occasions, Inmate Mixon saw plaintiff submit cell move slips to Officers Pablo, Tejea, King, Benavidez, and Kendall. Id. ¶ 10. Inmate Mixon also witnessed Antonio asking to move or "sentence his celly to death. I'll kill him and that his celly was the devil." Id. ¶ 14. In response, Inmate Mixon states that both Antonio and plaintiff were denied the cell move, and Officer Kendall told plaintiff to "stop being scary lock it back up." Id. ¶¶ 12, 14.

As a porter, Inmate Mixon witnessed the officers instigate fights and egg people on when issues arose. Mixon Aff. ¶ 18. Inmate Mixon heard staff say "how scary [plaintiff] was and they weren't moving neither of them until the fight." Id. ¶ 15.

Every time Inmate Mixon approached plaintiff's cell, he witnessed plaintiff on his bed and Antonio "pacing the cell and shouting that he was Jesus Christ." Mixon Aff. ¶ 17. On December 15, 2017, Inmate Mixon witnessed Antonio walking out of the dayroom shouting that he's "going to kill the devil that's in his cell." Id. ¶ 19.

### B. Inmate Jesus Abalos

Plaintiff's second proposed witness is Jesus Abalos, CDCR # K-36162. Plaintiff submits an affidavit from this witness, who was housed at MCSP's A Yard Building 1 in December 2017. Abalos Aff. ¶ 1. Inmate Abalos states that Antonio's "weird [*sic*] and violent behaviors" were well known to many people, including jail staff. Abalos Aff. ¶ 2. He claims to have personally witnessed plaintiff tell defendant Pablo that he was being threatened by Antonio and feared his cellmate would attack him, to which Officer Pablo told plaintiff to return to his cell or she would hit her alarm. Abalos Aff. ¶¶ 4-5. Inmate Abalos also witnessed plaintiff and Antonio talk to staff members several times to get a cell move. Id. ¶ 7. Inmate Abalos apparently heard officers talk amongst themselves, calling plaintiff "trash" and saying that he "need[ed] to grow some balls." Id. ¶ 6.

### III.   Discussion

A district court's decision whether to issue a writ of habeas corpus ad testificandum is premised on a threshold determination that the proffered testimony is relevant to the issues in the case. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Stated differently, the Court must assess " 'whether the prisoner's presence will substantially further the resolution of the case.'" Wiggins v. Alameda County, 717 F.2d 466, 468 n.1 (9th Cir. 1983) (quoting Ballard v. Spradley, 557 F.2d 476, 480 (5th Cir. 1977)).

As noted, plaintiff asserts an Eighth Amendment failure-to-protect claim against the defendants for continuing to house him with Antonio despite Antonio's general mental health problems and his specific threats directed towards plaintiff. Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of the inmates." Hudson v.

1   Palmer, 468 U.S. 517, 526–27 (1984). This responsibility requires prison officials to protect

2   prisoners from injury by other prisoners. Farmer v. Brennan, 511 U.S. 825, 833–34 (1994).

3         A "failure to protect" claim under the Eighth Amendment requires a showing that "the

4   official [knew] of and disregard[ed] an excessive risk to inmate health or safety." Farmer, 511

5   U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn

6   that a substantial risk of serious harm exists, and he must also draw the inference." Id. "[I]t is

7   enough that the official acted or failed to act despite his knowledge of a substantial risk of serious

8   harm." Id. at 842. (citations omitted). "Whether a prison official had the requisite knowledge of a

9   substantial risk is a question of fact subject to demonstration in the usual ways, including

10  inference from circumstantial evidence, ...and a factfinder may conclude that a prison official

11  knew of a substantial risk from the very fact that the risk was obvious." Id. (citations omitted).

12        The Eighth Amendment requires more than a "mere threat" of possible harm. See Berg v.

13  Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986) ("The standard does not require that the guard or

14  official believe to a moral certainty that one inmate intends to attack another at a given place at a

15  time certain before that officer is obligated to take steps to prevent such an assault. But, on the

16  other hand, he must have more than a mere suspicion that an attack will occur.") While a

17  prisoner's failure to give prison officials advance notice of a specific threat is not dispositive with

18  respect to whether prison officials acted with deliberate indifference to the prisoner's safety needs,

19  deliberate indifference will not be found where there is no other evidence in the record showing

20  that the defendants knew of facts supporting an inference and drew the inference of substantial

21  risk to the prisoner. Labatad v. Corrs. Corp. of America, 714 F.3d 1155, 1160-61 (9th Cir. 2013).

22        The Court finds that the testimony of Inmate Mixon and Inmate Abalos would be relevant

23  to plaintiff's failure-to-protect claim. Specifically, they will testify to the defendants' prior

24  knowledge of cellmate Antonio's mental health, to the defendants' knowledge of Antonio's

25  specific threats against plaintiff, to plaintiff's multiple requests to the defendants to be transferred

26  in light of the foregoing, and to the defendants' responses thereto. Because plaintiff has

27  sufficiently demonstrated that these inmate witnesses' presence at trial will substantially further

28  resolution of the case, his motion for the attendance of witnesses will be granted.

## IV. Conclusion

Based on the foregoing, IT IS HEREBY ORDERED that plaintiff's motion for the attendance of witnesses (ECF No. 35) is GRANTED. Approximately one month before the trial, the Court will issue writs of habeas corpus ad testificandum to have Mr. Rob Mixon and Jesus Abalos brought to the court to testify at the trial.

Dated: September 23, 2020

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE